WYGONSKI et al.

v.

MEDINA COUNTY AGRICULTURAL SOCIETY et al.

2002-Ohio-7459.]

Court of Common Pleas of Ohio,
Medina County.

No. 01–CIV–0014.

Decided Nov. 21, 2002.

**10**

Martin Sandel, for plaintiffs.

Jeffrey W. Largent, Nick Tomino, Linda Hoffmann and Edward G. Kagels, for defendants.

---

JAMES L. KIMBLER, Judge.

### Statement of the Case

{¶ 1}   The plaintiffs filed a lawsuit against three governmental subdivisions: the city of Medina, the Board of Commissioners of Medina County, and the Medina County Agricultural Society, for injuries sustained by three minor boys as a result of drinking a soft drink made with contaminated water.  The County of Medina has filed a motion for summary judgment alleging that there is no genuine issue of material fact and it is entitled to a summary judgment as a matter of law.  The motion was filed pursuant to Civ.R. 56.  The parties stipulated that the basis for the motion is the board's position that it is immune from liability pursuant to R.C. 2744.01 et seq.

### Findings of Fact

{¶ 2}   For purposes of ruling on the defendant's motion only, the court makes the following findings of fact:

{¶ 3}   Medina County owns the fairgrounds in Medina, Ohio.

{¶ 4}   Annually, a county fair is conducted on these fairgrounds.

{¶ 5}   The fair is conducted by the Medina County Agricultural Society.

{¶ 6}   The fairgrounds has its own water system, which supplies water to vendors, exhibitors, and the animal barns.

{¶ 7}   The fair is open to the public.

{¶ 8}   During the fair, members of the Medina County 4–H Clubs conduct a Junior Livestock Show and Auction.

{¶ 9}   Animals are kept in the animal barns by exhibitors for both the Junior Livestock Show and Auction and for other shows.

{¶ 10}   E. coli bacteria can be transmitted in animal feces and bird droppings.

{¶ 11}   The minor sons of Chris Wygonski consumed a soft drink while at the Medina County Fair in 2000.

{¶ 12}   The soft drink was made from water supplied through the water system at the Medina County Fairgrounds.

{¶ 13}   Following the consumption of the soft drink, the boys began to show symptoms of E. coli bacterial infection.

Conclusions of Law

{¶ 14}   Political subdivisions are immune from liability unless the act that is alleged to have caused injury falls within one of the exceptions set forth in R.C. 2744.02.   R.C. 2744.02(A).

{¶ 15}   This immunity applies whether the act takes place while the political subdivision or its employee(s) are engaged in a proprietary or a governmental function.   R.C. 2744.02(A).

{¶ 16}   R.C. 2744.02(B) sets forth exceptions to the general rule of nonliability. R.C. 2744.02(B).

{¶ 17}   One of those exceptions is that a political subdivision can be sued for negligent acts causing injury to property or persons committed by employees of political subdivisions engaged in proprietary functions.   R.C. 2744.02(B)(2).

{¶ 18}   In addition, if the injury is caused by failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds open, in repair, and free of nuisance, then the political subdivision is not immune.   R.C. 2744.02(B)(3).

{¶ 19}   Definitions of a "governmental function" are set forth in the Revised Code. R.C. 2744.01(C)(1)(a), (b), or (c).

{¶ 20}   Examples of governmental functions are set forth in the Revised Code. R.C. 2744.01(C)(2).

{¶ 21}   Operations of county fairs or fairgrounds are not included in the list of governmental functions set forth in the Revised Code. R.C. 2744.02(C)(2).

{¶ 22}   The conducting of a livestock competition at a county fair by a county agricultural society is not a governmental function.   *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 733 N.E.2d 1141.

Holding

{¶ 23} Owning and maintaining a county fairgrounds are not a governmental function, but a proprietary function, and, therefore, if the water system is negligently maintained, the board of county commissioners that owns the fairgrounds is not immune from liability if injury results from the negligent maintenance.

{¶ 24} Alternatively, if owning and maintaining a county fairgrounds *are* a governmental function, then a board of county commissioners can be sued in tort for failing to keep the water system of a fairgrounds open, in repair, and free from nuisance.

Discussion

{¶ 25} R.C. Chapter 2744 divides, for purposes of determining political-subdivision tort liability, the functions of political subdivisions into two categories: proprietary and governmental.

{¶ 26} An examination of the definition of a governmental function set forth in R.C. 2744.01(C)(1), shows that the operation of a county fairgrounds is not classified as a governmental function. Operation of a county fairgrounds is not imposed upon the state as an obligation of sovereignty and is not performed by a political subdivision voluntarily or pursuant to legislative requirement. R.C. 2744.01(C)(1)(a). It is not a function that is for the common good of all citizens of the state. R.C. 2744.01(C)(1)(b). It is not a function that promotes or preserves the public peace, health, safety or welfare, and it is not an activity that is customarily engaged in only by governmental entities, nor is it a function listed in R.C. 2744.01(C)(2)(g). R.C. 2744.01(C)(1)(c).

{¶ 27} In concluding that operation of a county fairgrounds is not imposed on the state as an obligation of sovereignty, the Ohio Revised Code does not require counties to hold county fairs. There is no doubt that under R.C. 307.02, a board of county commissioners may purchase land for a county fairgrounds, but the fact that a board *may* do so does not mean that it *must* do so. Any compulsion that a board of county commissioners has to provide fairgrounds is political, not legal.

{¶ 28} Likewise, holding a county fair is not for the common good of all citizens of Ohio. While many people, including the author of this opinion, like county fairs and like attending county fairs, many do not. Unlike maintaining a road system, which does benefit all citizens of Ohio, even those who do not use the roads, holding a county fair, and owning a county fairgrounds, benefits only those who attend the fair.

{¶ 29}  Finally there is the issue of whether a county fair is an activity covered by R.C. 2744.01(C)(1)(c).  In order to be such an activity, there is a three-pronged test that must be met.  The function must be one that:

{¶ 30}  Promotes or preserves the public peace, health, safety, or welfare;

{¶ 31}  Involves activities not engaged in or customarily engaged in by non-governmental persons;  and

{¶ 32}  Is not listed in R.C. 2744.01(G)(2) as a propriety function.

{¶ 33}  Two of the prongs are easily met.  A county fair is not listed as a propriety function in R.C. 2744.01(G)(2).  A county fair is also a function that promotes or preserves the public welfare.  It does this by encouraging attendees to learn about agricultural, by encouraging knowledge among exhibitors of agriculture and businesses associated with agriculture, and by providing recreational opportunities for county residents.

{¶ 34}  It is the second prong listed above, however, that is not met.  A county fair involves activities engaged in and customarily engaged in by nongovernmental persons.  At county fairs, there are amusement rides, concerts by various kinds of musicians, livestock sales, food vendors, demolition derbies, and craft displays.  All of these are activities engaged in by nongovernmental persons.

{¶ 35}  Therefore, since not all three of the prongs contained in R.C. 2744.02(C)(1) are met, and since holding a county fair is not listed as a governmental function in R.C. 2744.02(C)(2), this court holds that holding a county fair, and maintaining county fairgrounds, is a propriety function and not a governmental function.

{¶ 36}  Since it is a proprietary function, and not a governmental function, this court finds that the board of county commissioners and its employees can be sued for negligently maintaining the county fairgrounds, including its water system.  R.C. 2744.02(B)(2).

{¶ 37}  Alternatively, however, even if this court were to conclude that operating a county fair and maintaining county fairgrounds are governmental functions, it would still be compelled to overrule the board's motion for summary judgment.

{¶ 38}  A board of county commissioners can be sued in tort for failing to keep public grounds open, in good repair, and free of nuisance.  R.C. 2744.02(B)(3).  If a fairgrounds is owned by a board of county commissioners and has a water system that is putting out contaminated water that is being used for food preparation, then it is arguable that the fairgrounds are public grounds that are not "in repair" and "free of nuisance."

{¶ 39}  Since the only basis for the board's summary judgment motion is that the board is immune, R.C. 2744.01 et seq., and since this court finds no such immunity, the board's motion for summary judgment is not well taken.

Order

{¶ 40}  The board's motion for summary judgment is denied.

{¶ 41}  SO ORDERED.

Motion denied.